834 So.2d 237 (2002)
H.A.P., a juvenile, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-1049.
District Court of Appeal of Florida, Third District.
November 6, 2002.
Rehearing and Rehearing Denied January 15, 2003.
Bennett H. Brummer, Public Defender, and Carlos Gonzalez, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Michael J. Neimand, Assistant Attorney General, for appellee.
Before JORGENSON, COPE and GODERICH, JJ.
Rehearing and Rehearing En Banc Denied January 15, 2003.
GODERICH, Judge.
A petition for delinquency was filed against H.A.P., a juvenile, alleging that he unlawfully resisted, obstructed or opposed law enforcement officers in the lawful execution of a legal duty without violence, in violation of section 843.02, Florida Statutes (2002). We affirm.
The evidence at the adjudicatory hearing established that approximately fifteen to twenty police and SWAT team officers went to a residence for the purpose of executing a narcotics search warrant. When the officers arrived, they encountered H.A.P., who was standing in parking spaces located in the apartment complex *238 where he resides. H.A.P. was standing directly across the street from the front door of the residence that the police were going to search.
Detective Ellis Casanado, whose primary responsibility was the outer perimeter of the residence that was going to be searched, approached H.A.P. and ordered him to leave the area for his safety. At that point, H.A.P. began to shout profanities. Detective Viejo, the affiant on the warrant, stopped the execution of the warrant, approached H.A.P., and also ordered him to leave the area. H.A.P. once again refused to leave. Police officers ordered H.A.P. in excess of ten times to leave the area. Each time H.A.P. was ordered to leave, he shouted louder and became more profane resulting in a large crowd gathering near the apartment complex. As a result, the SWAT team's execution of the search warrant was put on hold so that the officers could focus their attention on H.A.P. Thereafter, H.A.P. was ordered to leave the area or face arrest. H.A.P. remained defiant and was arrested.
Following the conclusion of the State's case-in-chief and after the defense rested, the defense moved for a judgment of acquittal. The defense argued that "obstructive conduct," not "offensive words," is necessary for establishing the offense of resisting an officer without violence. The trial court denied H.A.P.'s motions. Thereafter, the trial court found that H.A.P. committed the charged offense, but withheld adjudication and imposed probation. This appeal followed.
H.A.P. contends that the trial court erred by denying his motions for judgment of acquittal where his actions, the use of profanity and refusal to obey the police officers' orders to leave a public place, were not punishable conduct under section 843.02, Florida Statutes (2002). We disagree.
In order to establish a violation of section 843.02, the State is required to establish that: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of the lawful duty." Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001). At the adjudicatory hearing, the defense did not dispute the fact that the law enforcement officers were engaged in the lawful execution of a legal dutythe execution of a search warrant. However, the parties did not agree as to whether H.A.P.'s actions "constituted obstruction or resistance of the lawful duty."
In arguing that his actions did not constitute obstruction or resistance of a law enforcement officer's lawful duty, H.A.P. relies on this Court's decision in J.G.D. v. State, 724 So.2d 711 (Fla. 3d DCA 1999). We find that H.A.P.'s reliance is misplaced.
In J.G.D., the police went to an apartment complex to investigate a burglary. By the time the police arrived, an unruly crowd had gathered at the apartment complex. J.G.D. began to loudly and profanely protest the manner in which the police were investigating the burglary. As a result, the police ordered J.G.D. to leave the apartment complex. After J.G.D. refused to leave, he was arrested and charged with resisting an officer without violence. On appeal, this Court reversed the adjudication of delinquency finding that the "record fail[ed] to show that the police order was, in these circumstances, justified by any cognizable wrongdoing on the part of the juvenile ... by his words...." J.G.D., 724 So.2d at 711-12.
J.G.D. is factually distinguishable from the instant case. H.A.P. was not arrested for merely cursing at law enforcement officers. H.A.P. was arrested because he refused *239 to leave the nearby area where the SWAT team was attempting to execute a narcotics search warrant. It is important to remember that H.A.P. was standing directly across the street from the front door of the residence that the police were going to search. Therefore, he was in the direct line of fire if the occupants of that residence would have fired weapons upon the SWAT team's execution of the narcotics search warrant. As such, prior to the execution of the search warrant, the police, in an attempt to secure the outer perimeter, believed, and rightfully so, that it was necessary for H.A.P. to leave the area.[1]See Brown v. Miami-Dade County, 26 Fla. L. Weekly D2844, D2845 (Fla. 3d DCA Dec.5, 2001)(holding that "police officers do owe a duty to exercise reasonable care to protect innocent bystanders ... where their law enforcement activities create a foreseeable zone of risk."). H.A.P.'s defiance resulted in the police delaying the execution of the narcotics search warrant. Thus, H.A.P.'s actions constituted an obstruction or resistance of a law enforcement officer's lawful duty, and therefore, the trial court properly found that H.A.P. violated section 843.02, Florida Statute (2002).
We agree with the State that, based on Wilkerson v. State, 556 So.2d 453 (Fla. 1st DCA), review denied, 564 So.2d 1088 (Fla.1990), the trial court properly found that H.A.P. violated section 843.02. In Wilkerson, deputy sheriffs were attempting to arrest several individuals for selling narcotics and to determine whether these individuals had weapons. At that time, the defendant emerged from a crowd that had gathered yelling profanities. A deputy officer then ordered the defendant to leave the area because she was "interfering with their efforts to make the arrests." Wilkerson, 556 So.2d at 454. After she refused to do so, the defendant was arrested and charged with violating section 843.02, Florida Statutes. In affirming the defendant's conviction, the Second District Court of Appeal found that the defendant "was not arrested for merely yelling at and cursing officers," but that she was arrested "because the officer considered her physical presence was obstructing or impeding him in the performance of his duty." Wilkerson, 556 So.2d at 456. As the Second District held, "[p]olice officers may lawfully demand that citizens move on and away from the area of a crime without impermissibly infringing upon the citizen's First Amendment rights." Id.; M.M. v. State, 674 So.2d 883 (Fla. 2d DCA 1996); see also 16 Fla. Jur.2d Criminal Law § 4131 (2001)("Police officers may lawfully demand that citizens move on and away from the area of a crime without impermissibly infringing upon First Amendment rights, and failure to do so may constitute a violation of the statute which forbids resisting or obstructing an officer without violence.")(footnote omitted).
In the instant case, as in Wilkerson, H.A.P. was not arrested for yelling profanities. Rather, H.A.P. was arrested because his actions interfered with the law enforcement officers' execution of the search warrant. See Wilkerson, 556 So.2d at 456 ("Although a person's speech may at times be implicated incidentally in the enforcement of [section 843.02, Florida Statutes], its plainly legitimate sweep is to reach conduct that physically obstructs or opposes an officer in the performance of lawful duties.") As such, we affirm the order under review.
Affirmed.
COPE, J., concurs.
*240 JORGENSON, Judge, dissenting.
Until today I had thought that one could ignore the unlawful order of a police officer without incurring criminal liability. My colleagues think otherwise and therefore I respectfully dissent. Violation of section 843.02 requires that the respondent obstruct or oppose the officers in the execution of their duties. By any logical definition[2] of those terms, that simply did not happen here. H.A.P. was lawfully standing in the parking lot of the apartment building in which he lives, across the street from the police activity. His presence there did not obstruct or impede the officers in their execution of the search warrant: he did not threatenverbally or otherwisethe officers in any manner; he did not throw anything at them; he did not block their passage; he did not contaminate a crime scene; and he did not come into any physical contact with the officers prior to his arrest. Execution of the search, and any resulting danger to the officers, was delayed because of the officers' own reluctance to immediately conduct the search where a bystander could be injured, not because the respondent prevented them from executing the search. The respondent was simply standing in a public area watching the police "who would certainly be a natural object of curiosity." Alexander v. State, 693 So.2d 670, 673 (Fla. 4th DCA 1997). Clearly his conduct was transformed into a "criminal act" only when the officers requested that he leave the area, and he refused. "Thus, it is premised that under this statute the policeman can convert the character of an event from nonpunishable to punishable by proclamation alone." State v. Manning, 146 N.J.Super. 589, 370 A.2d 499, 504 (A.D.1977) (Antell, J.A.D., dissenting).
Nor does Brown v. Miami-Dade County, 837 So.2d 414, 415 (Fla. 3d DCA 2001), cited by the majority, justify the respondent's conviction on the basis that the government was trying to protect the potential plaintiff from injury and itself from liability; in other words, the majority implies, it's better to arrest a potential plaintiff than face a civil suit. This is not the law. The respondent's decision to remain in a potentially perilous situation was perhaps unwise, but not criminally punishable. If protection of the wayward bystander is necessary to properly secure a perimeter, the government must find a way of effecting this protection that does not require the arrest and criminal prosecution of those it means to protect, particularly those who are lawfully present on their property.
Because the officers had no legal authority to remove the respondent from the parking lot of his own apartment building, the respondent was well within his constitutional rights to protest their orders to leave the area. See L.A.T. v. State, 650 So.2d 214, 217 (Fla. 3d DCA 1995) ("As we all know, `[t]he freedom of individuals to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.'") (quoting City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)); J.G.D. v. State, 724 So.2d 711 (Fla. 3d DCA 1999) ("Because the order to leave and therefore the arrest for failure to obey that order were each unlawful, the juvenile *241 had every right to resist without violence."). The respondent's verbal protest and concomitant physical presence to voice that protest (so long as he does not physically obstruct the officers' in the execution of their duties) was protected free speech. See City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).
As the law is clear that offensive speech cannot constitutionally serve as a basis for violation of section 842.03, see, e.g., W.L. v. State, 769 So.2d 1132 (Fla. 3d DCA 2000) (holding that profane and offensive speech directed to officers is protected under the First Amendment to the United States Constitution), then surely mere presence[3] cannot serve as such a basis. The majority's construction of section 843.02 stands the statute on constitutionally unstable ground. Wilkerson v. State, 556 So.2d 453 (Fla. 1st DCA 1990), upon which the majority primarily relies[4], runs contrary to the Supreme Court's decision in City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). In Wilkerson, the defendant stood across the street from the scene of a narcotics investigation and arrest, cursing and yelling at the officers. Id. at 453. After the officers told the defendant to leave the area, and she refused, the officers arrested the defendant for violation of section 843.02. Id. The officers were not using the area in which she stood; there was no evidence located in the area where she stood; and she was not throwing anything at or coming into any physical contact with the officers. She was simply standing across the street, yelling obscenities. As clearly the officers in Wilkerson sought to remove the defendant from the area simply because she was a nuisance, Wilkerson is at odds with the explicit language used by the Supreme Court in Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987): criminal prosecution of speech is constitutional only where the accused's actions "produce[d] a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Wilkerson also conflicts with this court's prior decisions. See, e.g., W.L. v. State, 769 So.2d 1132 (Fla. 3d DCA 2000) ("Respondent was `punished simply for asserting his right to free speech in what the police consideredand what may well have beenan offensive manner. But the constitution does not permit that result.'") (quoting L.A.T. v. State, 650 So.2d 214, 217 (Fla. 3d DCA 1995)); J.G.D. v. State, 724 So.2d 711 (Fla. 3d DCA 1999); S.D. v. State, 627 So.2d 1261, 1262 (Fla. 3d DCA 1993). See also R.S. v. State, 531 So.2d 1026 (Fla. 1st DCA 1988).
The interpretation of section 843.02 given by the majority in this case and the First District in Wilkerson renders the statute unconstitutionally overbroad and *242 vague as to the respondent. I would reverse and certify conflict with Wilkerson.
NOTES
[1] As testified to by Detective Casanado, because the subject of the search warrant was still inside of the residence, H.A.P. "placed approximately twenty officers' lives in jeopardy along with himself and the crowd of people across the street."
[2] See, e.g., Woodward v. Gray, 241 Ga.App. 847, 527 S.E.2d 595, 598 (2000) ("To obstruct, resist, or oppose for purposes of obstructing an officer implies forcible resistance and does not mean the refusal to merely obey the police officer's command to move more than eight feet from where the arrest was being made so that the police could perform their duties unimpeded.").
[3] By "mere presence," I mean, of course, that type of presence which does not actually and physically obstruct an officer in the lawful execution of his or her duties. If the respondent had been, for example, blocking officers' access to a crime scene or contaminating evidence with his presence, his presence could be deemed a violation of section 842.03.
[4] The only other case cited by the majority in support of its opinion is M.M. v. State, 674 So.2d 883 (Fla. 2d DCA 1996), which is factually distinguishable. In M.M., "[t]he officer and another witness testified that they thought the appellant was going to jump on the officer's back from the way she came at him. The officer told the appellant that she needed to back off, get away and leave him alone; he was taking care of an investigation and she should not interfere. She did not comply and continued to approach as the officer put out his hand to further indicate she should stop. A bystander became involved, and the situation threatened to escalate." Id. at 884 (emphasis supplied). The defendant's threatening gestures toward the officer certainly distinguish M.M. from this case.